**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 14-121-DLB**

**WANDA PARMLEY**                                                                 **PLAINTIFF**

**vs.**                    <u>**MEMORANDUM OPINION AND ORDER**</u>

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                               **DEFENDANT**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Wanda Parmley brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her application for Supplemental Security Income (SSI) on March 19, 2010, alleging a disability onset date of November 4, 2008. (Tr. 101-02). She claimed she was no longer able to work due to both physical and mental impairments. (Tr. 109). Plaintiff's claim was denied initially (Tr. 32), and again on reconsideration (Tr. 33). ALJ Michele M. Kelley held a hearing on July 23, 2013, and thereafter denied Plaintiff's claim. (Tr. 11-23). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 23, 2014. (Tr. 6-9). This appeal followed.

**II.   DISCUSSION**

**A.   Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.   The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since March 19, 2010, the application date. (Tr. 16). At Step 2, the ALJ found that Plaintiff had the following severe impairment: lumbar strain/sprain and annular tear at L4/5 with disc bulging back pain. *Id.* After considering the four broad functional areas in Section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), the ALJ determined that Plaintiff had nonsevere mental impairments. *Id.* At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

At Step 4, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform "less than a full range of medium work" with the following limitations:

> [Plaintiff] can lift, carry, push, and pull 25 pounds frequently and 50 pounds occasionally. She can stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. She can occasionally climb ramps or stairs and stoop. She should avoid concentrated exposure to extreme cold, humidity, vibrations, and hazards such as vibrating machines.

*Id.*

After determining that Plaintiff has no past relevant work, the ALJ proceeded to the final step of the sequential analysis. At Step 5, the ALJ found that Plaintiff was capable of performing a significant number of jobs in the national and regional economy. (Tr. 22). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. *Id.* The ALJ then asked the VE additional hypothetical questions based on limitations not contained in the ALJ's RFC assessment, but otherwise supported by evidence in the record. (Tr. 22-23). The VE testified that even with these additional limitations, Plaintiff could still perform a significant number of jobs in the national and

regional economies. *Id.* Based on the VE's testimony, and considering the Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was "not disabled" as defined by the Social Security Act. (*Id.*).

### C. Analysis

Plaintiff raises three arguments on appeal: (1) the ALJ failed to give good reasons for discounting her treating physician's opinion; (2) the ALJ failed to include her mental impairments in her RFC, and as a result, the ALJ's hypothetical to the VE did not accurately describe her limitations; and (3) the ALJ erred in determining that her mental impairment was not severe.

#### 1. The ALJ's gave "good reasons" for rejecting the opinion of Plaintiff's treating physician

A treating physician's opinion as to the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Even if the opinion is not entitled to "controlling weight," there remains a presumption, albeit a rebuttable one, "that the opinion of a treating physician is entitled to great deference." *Id.* In determining how much deference to give to the treating physician's opinion, the ALJ must consider a number of factors, including "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

The ALJ must also "provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This rule ensures that claimants understand the disposition of their case, particularly when their own physician deems them disabled, and also permits meaningful appellate review of the ALJ's decision. *Id.* Thus, even if the ALJ's decision to disregard the treating physician's opinion is supported by the record, the decision may still be reversed if adequate explanation is missing. *Id.*

Plaintiff contends that the ALJ failed to give adequate reasons for discounting the opinion of her treating physician, Dr. Amy Conley. Dr. Conley opined that Plaintiff had the following limitations: stand and walk less than two hours in an eight hour day; occasionally lift five pounds and frequently lift none; occasionally bend and stoop; never balance; never climb ladders and stairs; work less than two hours per day; and absent from work more than four days per month. (Tr. 367). In assessing Plaintiff's RFC, the ALJ ultimately accepted agency consultant Dr. Subhideb Mukherjee's opinion over Dr. Conley's. (Tr. 21).

Contrary to Plaintiff's argument, the ALJ provided "good reasons" for rejecting Dr. Conley's opinion. The ALJ explained that she gave Dr. Conley's opinion "no weight" because "the evidence of record, including her own treatment records, do not support such severe limitations." (Tr. 21). More specifically, the ALJ noted that the "diagnostic and clinical evidence demonstrated no significant findings," and that Plaintiff's "activities of daily living, including cooking, cleaning, and caring for a disabled son and husband, are not consistent with an individual as limited in Dr. Conley's opinion." *Id.* These "good reasons" are supported by substantial evidence in the record.

First, as the ALJ noted, Dr. Conley's opinion is inconsistent with her own treatment records. Although Plaintiff at times reported more severe back pain (Tr. 267), Dr. Conley

5

assessed Plaintiff's back pain as "moderate" in March 2011, December 2012, and February 2013. (Tr. 273, 340, 245). In several reports, Dr. Conley indicated that Plaintiff had normal reflexes (Tr. 273, 348, 352). Furthermore, Dr. Conley routinely classified Plaintiff's presentation as normal, or no distress. (Tr. 266, 345, 352, 361). Finally, in December 2012, Dr. Conley reported that Plaintiff was "feeling better" after a series of steroid injections. (Tr. 259, 344). *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011) ("Here, the ALJ properly declined to accord [the treating physician's] opinion 'controlling weight' because there was substantial contrary evidence in the record.").

Second, the ALJ correctly pointed out that Dr. Conley's assessment is at odds with Plaintiff's activities of daily living. Specifically, Plaintiff's function reports suggests that she cooks meals on a daily basis, makes her bed, does laundry multiple times a week, and grocery shops. (Tr. 119-121, 166-67). Although Plaintiff reported increased hip pain in December 2012, her pain resulted from jumping off a tractor, an activity inconsistent with Dr. Conley's assessment. (Tr. 344). *See Helm*, 405 F. App'x at 1002 ("[T]he ALJ discounted Dr. Cheng's assessment in part because Helm 'continues to perform significant activities around the house . . . .'").

Third, Dr. Conley's opinion is inconsistent with other opinion evidence. In December 2011, state agency consultant Dr. Subhideb Mukherjee opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could stand and/or walk six hours out of an eight-hour day; could sit six hours out of an eight-hour day; and could occasionally stoop, as well as climb ladders, ropes, and scaffolds. (Tr. 323-30). Further, consultative examining physician Dr. Naushad Haziq opined that Plaintiff had pain in her lumbar back,

6

but only "mild limitation of movement of the lumbar spine," and no tenderness or loss of range of motion in the hips. (Tr. 319).

Finally, the Court agrees with the ALJ that there is no way to determine whether Dr. Conley's opinion is supported by objective evidence. (Tr. 21). Dr. Conley provided her RFC assessment by circling limitations on a standardized form. (Tr. 367). Beyond that, she gave no explanation for her diagnosis. As a result, the Court cannot determine whether her assessment was based on acceptable clinical and laboratory diagnostic techniques. *See Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009).

On the other hand, Dr. Mukherjee's opinion is supported by objective evidence. Diagnostic testing revealed only minimal disc bulging with a mild degree of central canal stenosis at the L4-L5 level (Tr. 183), as well as no loss in motor strength or sensory deficit (Tr. 189, 273, 345). Moreover, Plaintiff reported 100 percent improvement in her back after completing therapy and stated that she was able to prepare meals, vacuum, do laundry, and get down on her hands and knees to mop. (Tr. 130, 139, 161, 202, 249). Based on the foregoing, the Court finds that Dr. Conley's opinion was not entitled to controlling weight, and further finds that the ALJ gave good reasons for accepting Dr. Mukherjee's opinion over that of Dr. Conley. *See Durrette v. Comm'r of Soc. Sec.*, No. 94-3734, 1995 WL 478723, at *3-4 (6th Cir. 1995) (concluding that it was proper for the ALJ to give greater weight to the reviewing doctors' opinions because the treating physician's opinion was conclusory, not supported by objective evidence, and controverted by other medical opinion testimony).

**2. The ALJ committed harmless error in determining Plaintiff's RFC**

Plaintiff contends that the ALJ's RFC finding and hypothetical question to the VE

failed to account for her metal impairments. Plaintiff is correct that the ALJ erred in assessing her RFC at Step 4. However, at Step 5 the ALJ posed a hypothetical to the VE that adequately described all of Plaintiff's limitations. Therefore, any error by the ALJ at Step 4 was harmless.

A claimant's RFC is the most she can do despite her impairments. 20 C.F.R. §§ 416.945(a)(1) & (5). The ALJ must assess a claimant's RFC based on all relevant evidence. 20 C.F.R. § 416.945(a)(3). When a plaintiff has a severe impairment (such as here), the ALJ must consider the limiting effects of all impairments, even those that are not severe. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). If an ALJ decides to discount a nonsevere limitation when determining a Plaintiff's RFC, she must state the evidence used to support that finding. *Id.* at 788. The mere diagnosis of a condition does not necessarily establish a work-related limitation. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Plaintiff argues that the ALJ erred in determining her RFC. She points to the following in support: (1) her own statements that she took medication for her nerves and has difficulty completing tasks (Tr. 109, 112, 169); (2) her sister's statements that she was depressed and nervous (Tr. 118-126); (3) an assessment from Nurse Sally Ferguson that indicated she had posttraumatic stress disorder, depressive disorder, and a global assessment of functioning score of 55 (Tr. 363); and (4) Dr. Haziq's opinion that she suffered from anxiety and depression (Tr. 320). Plaintiff suggests that these opinions demonstrate that she has a severe mental impairment and that this finding should have been included in her RFC and the ALJ's hypothetical question to the VE.

8

The ALJ instead relied on reports from state agency consultants and psychologists Drs. Ann Demaree and Ed Ross. Both doctors opined that Plaintiff does not have a severe mental impairment. (Tr. 283, 301). For the following reasons, the ALJ was permitted to accept this opinion over the evidence Plaintiff relies upon. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

First, Plaintiff admitted to lying to a clinician about her treatment progress. (Tr. 389-90). This alone justifies the ALJ's conclusion that Plaintiff's statements about her limitations were not credible. (Tr. 20). Second, because Nurse Ferguson is a non-medical source, the ALJ had discretion to determine how much weight to giver her opinion, particularly here where there is "no clinical or treatment records supportive of [her] conclusion." (Tr. 21); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-41 (6th Cir. 2007). The same can be said of the ALJ's treatment of Plaintiff's sister's statement. Finally, although Dr. Haziq opined that Plaintiff suffered from depression, he is not a treating source, and nowhere does he suggest that Plaintiff's mental health limited her ability to work. Thus, substantial evidence supports the ALJ's decision to adopt Drs. Demaree's and Ross' opinion that Plaintiff does not have a severe mental impairment. The ALJ erred, however, by failing to address the totality of their opinions.

Although Drs. Demaree and Ross ultimately found that Plaintiff's mental impairment was not severe, they did opine that Plaintiff suffered from anxiety. (Tr. 283, 287, 301). Both doctors concluded that as a result of Plaintiff's anxiety she had mild limitations in restrictions of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 292, 311). The ALJ discussed these limitations at Step 2. Yet, at Step 4 she failed to analyze whether those

9

limitations impacted Plaintiff's ability to work. This was error. *See White*, 312 F. App'x at 788 (holding that it was error for an ALJ to give "no explanation for totally discounting the objective evidence of [a claimant's] mental impairment in determining [the claimant's] RFC); *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (concluding that an ALJ erred at Step 4 by not discussing what impact a claimant's mild mental limitations had on her RFC); *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013). Again, once the ALJ found that Plaintiff had severe lower back impairments, she was required to consider the combined effect of all impairments, including nonsevere mental limitations. *White*, 312 F. App'x at 787 (citing 20 C.F.R. §§ 404.1523, 404.1545(a)(2)). Because the ALJ did not discuss Plaintiff's mild mental limitations at Step 4, the Court cannot determine whether Plaintiff's RFC incorporates those limitations. And even if there is substantial evidence that Plaintiff's mild mental impairment does not limit her ability to work, the ALJ is still "required to state the basis for such conclusion," which the ALJ failed to do. *Hicks*, 2013 WL 3778947, at *3.

The Court will nevertheless affirm the Commissioner's decision, as the ALJ's error at Step 4 was ultimately harmless. At Plaintiff's hearing, the ALJ posed an initial hypothetical to the VE based on Plaintiff's faulty RFC. Yet, the ALJ asked a second hypothetical that properly included Plaintiff's mental limitations. Specifically, the ALJ asked:

> Assume a hypothetical individual with [Plaintiff's age, education, work experience, RFC, and some additional physical limitations], but . . . in addition this hypothetical individual can have only **occasional interaction with the public, coworkers, and supervisors, and can make only simple work-related decisions, and tolerate few, defined as occasional, changes in a routine work setting**. Can this hypothetical individual perform any jobs?

(Tr. 396) (emphasis added). These additional restrictions adequately account for Drs. Demaree's and Ross' opinion that Plaintiff has "mild" limitations in restrictions of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. In response to this hypothetical, the VE testified that Plaintiff could work as a machine tender (100,000 nationally/ 2,500 regionally), and a routing clerk (68,000 jobs nationally/ 3,000 regionally). (Tr. 397-98). Therefore, the ALJ concluded that "even if the claimant were so additionally limited, she could still perform a significant number of jobs in the national economy." (Tr. 23).

If the Commissioner establishes that a claimant can perform work existing in significant numbers in the national economy, a court must affirm the Commissioner's decision to deny benefits. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). In determining whether a claimant has the capacity to perform substantial gainful activity, the Commissioner may rely on a VE's testimony, so long as the question posed to the VE "portray[s] a claimant's physical and mental impairments," or in other words, "what the claimant can and cannot do." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004).

The additional hypothetical included all of Plaintiff's limitations–both physical and mental. Because the VE testified that despite these limitations Plaintiff can still perform jobs that exist in significant numbers in the national economy, the ALJ's decision to deny benefits is supported by substantial evidence. Remand would correct the RFC, but result in the same hypothetical question, and thus yield the same outcome. The Court therefore concludes that the ALJ's error at Step 4 was harmless. *See Rabbers v. Comm'r Soc. Sec.*

*Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (explaining that in social security disability cases courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (quotations and citations omitted); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 531 (6th Cir. 2001) (concluding that an ALJ committed harmless error in failing to discuss a doctor's summary because "[t]he ALJ . . . considered [claimant's] limitations . . . in the hypothetical posed to the vocational expert . . . [and the] vocational expert concluded that there were jobs in the area . . . ."); *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *4 (E.D. Tenn. Aug. 6, 2013) (finding harmless error where an ALJ failed to include a mental assessment in a claimant's RFC).

### 3. It is legally irrelevant whether the ALJ erred in finding that Plaintiff's mental impairments are nonsevere

In a somewhat related argument, Plaintiff contends that the ALJ erred at Step 2 by finding that her mental impairments are nonsevere. Even if Plaintiff is correct, her argument is of no consequence. When an ALJ finds that a claimant has a severe impairment, and as a result considers the claimant's severe and nonsevere impairments in the later steps of the sequential analysis, it is "legally irrelevant" whether the ALJ classified some of the plaintiff's impairments as nonsevere. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that Plaintiff has severe lumbar strain/sprain and annular tear at L4/5 with disc bulging. (Tr. 16). Because Plaintiff cleared Step 2, the ALJ moved on to the remaining steps in the analysis. (Tr. 18-23). At Step 5, the ALJ then considered all of Plaintiff's

impairments, severe and nonsevere, by proposing the second hypothetical to the VE. Accordingly, Plaintiff's argument that her mental impairment is severe is a moot point.

### III.    CONCLUSION

For the reasons stated herein, the court concludes that the ALJ's findings were adequately explained and supported by substantial evidence.  Accordingly,

    (1)    The decision of the Commissioner is hereby **AFFIRMED**;

    (2)    Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

    (3)    Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**;

    (4)    A Judgment shall be entered contemporaneously herewith.

This 9th day of June, 2015.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\14-121 Parmley MOO.wpd